UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BENJAMIN STIBBE,

Petitioner,

v.

Case No. 24-cv-1378-pp

DAISY CHASE,

Respondent.

---

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS (DKT. NO. 16), DENYING PETITION FOR WRIT OF *HABEAS CORPUS*, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND DISMISSING CASE**

---

On October 28, 2024, the petitioner filed a petition for writ *of habeas corpus* under 28 U.S.C. §2254 challenging his 2006 and 2007 convictions for reckless homicide by the delivery of a controlled substance and manufacturing/delivering heroin in State v. Stibbe, Ozaukee County Circuit Court Case Nos. 05CF295 and 06CF171. Dkt. No. 1. Two days later, the petitioner filed a second *habeas* petition, which the court dismissed as duplicative. Stibbe v. Meisner, Case No. 24-cv-1396. The court allowed the petitioner to file an amended petition in this case, and on June 2, 2025 the petitioner did so, this time challenging his convictions in State v. Stibbe, Ozaukee County Circuit Court Case Nos. 05CF275 and 06CF171. Dkt. No. 11. The court screened the amended petition and allowed the petitioner to proceed on his claims that his plea was not knowing or voluntary, that he received

ineffective assistance of counsel and that Wisconsin's classification of reckless homicide is unconstitutionally vague. Dkt. No. 12 at 4.

On October 10, 2025, the respondent filed a motion to dismiss on timeliness grounds and argued that more than a decade had passed before the petitioner returned to the state court to file a postconviction motion. The petitioner responds that equitable tolling excuses the delay, as well as his claim of actual innocence. Because the petitioner's claims are undermined by the record and not supported by law, the court will deny the petition and dismiss the case.

## I. Background

### A. State Court Convictions

In his original federal petition (filed October 28, 2024), the petitioner referenced two state-court convictions: Case No. 05CF295 and Case No. 06CF171, both in Ozaukee County Circuit Court. Dkt. No. 1 at 2. In the amended petition (filed June 2, 2025), the petitioner referenced two state-court convictions, again both in Ozaukee County Circuit Court, Case Nos. 05CF275 (which he did not mention in his original petition) and 06CF171, and his federal criminal case, United States v. Stibbe, 06-cr-223-pp (E.D. Wis.). Dkt. No. 11. Each of these cases arose out of the petitioner's involvement in a heroin conspiracy that resulted in the deaths of at least four individuals.

The respondent attached to her motion to dismiss the judgments of conviction in each of the three state cases. Dkt. No. 17-1 to 17-3. They show that in State v. Stibbe, Case No. 05CF275, the petitioner pled no contest to one

count of manufacturing/delivering heroin in violation of Wis. Stat. §939.05 as party to a crime; the court entered judgment on November 15, 2007. Dkt. No. 17-1. In State v. Stibbe, Case No. 05CF295, the petitioner pled no contest to one count of first-degree reckless homicide/delivery of drugs in violation of Wis. Stat. §940.02(2)(a); the court entered judgment on September 14, 2006. Dkt. Nos. 17-3, 17-5 at 19. Finally, in State v. Stibbe, Case No. 06CF171, the petitioner pled no contest to an additional three counts of first-degree reckless homicide/delivery of drugs in violation of Wis. Stat. §940.02(2)(e); the court entered judgment on November 15, 2007. Dkt. Nos. 17-2 at 1, 17-4 at 1-3, 21. Between the three cases, the circuit court imposed an aggregate sentence of twenty-five years of initial confinement followed by fifteen years of extended supervision. Dkt. No. 17-4 at 2. Attorney William Mayer represented the petitioner from August 11, 2006 through September 23, 2008; Attorney Paul Bonneson represented the petitioner starting September 23, 2008 (the docket does not reflect when he completed his representation); and Attorney Rex Anderegg represented the petitioner from August 30, 2018 through October 15, 2024. Dkt. No. 17-4 at 4.

In Case No. 05CF295, defense counsel filed a no merit report with the Wisconsin Court of Appeals, and the petitioner did not respond. State v. Stibbe, Appeal No. 2007AP1505, unpublished slip op. (Wis. Ct. App. Mar. 26, 2008) (available at https://wcca.wicourts.gov). The Wisconsin Court of Appeals affirmed the judgment of conviction on March 26, 2008. Id. The petitioner did not seek review with the Wisconsin Supreme Court.

In Case No. 06CF171, defense counsel filed a motion for resentencing, arguing that the state had breached the plea agreement at sentencing and that trial counsel was ineffective for failing to object. State v. Stibbe, No. 06CF171, 2024 WL 2954508, at *1 (Wis. Ct. App. June 12, 2024). The Ozaukee County Circuit Court denied the petitioner's motion for resentencing on November 17, 2008. Id. The petitioner did not appeal; he later filed a motion for sentencing credit, which the circuit court partially granted on May 18, 2016. Dkt. No. 17-4 at 15.

The petitioner took no further action until October 11, 2021, when his new defense counsel filed a motion to modify his sentence and to withdraw his plea in Case Nos. 05CF275, dkt. no. 17-4 at 14, and O5CF295, dkt. no. 17-5 at 14. Counsel argued that the pleas were coerced and the products of ineffective assistance of counsel. Stibbe, Appeal Nos. 2023AP186, 2023AP187, 2024 WL 2954508, at *1. The circuit court conducted two evidentiary hearings, during which the district attorney and the petitioner's attorneys in the state and federal cases testified. Id. The circuit court issued separate orders, denying the motion to withdraw the plea on January 10, 2023, dkt. no. 11 at 36-43, and the motion to modify the sentence on June 7, 2023, id. at 45-46. The circuit court found that the motion to withdraw the plea was barred under Escalona-Narajo,[1] that the petitioner had failed to show that the pleas were coerced and that he had failed to show that the pleas were the product of counsel's ineffectiveness. Id. at 39-43. The Wisconsin Court of Appeals affirmed on June

[1] State v. Escalona-Naranjo, 185 Wis. 2d 168 (Wis. 1994).

12, 2024. Id. at 29-35. The Wisconsin Supreme Court denied the petitioner's petition for review on October 7, 2024. Stibbe, Appeal No. 2023AP186, 15 N.W.3d 37 (Table) (Wis. 2024); Appeal No. 2023AP187, 15 N.W.3d 38 (Table) (Wis. 2024).

The petitioner then filed two §2254 petitions in this court: the first on October 28, 2024, dkt no. 1, and the second on October 30, 2024, Stibbe v. Meisner, Case No. 24-cv-1396, Dkt. No. 1 (E.D. Wis.). The petitioner raised different grounds for relief in the two petitions. The court dismissed the later-filed case after finding that in both cases, the petitioner was challenging the same underlying conviction. Stibbe, Case No. 24-cv-1396, Dkt. No. 8. On June 2, 2025, the petitioner filed an amended petition in this federal case, to include all his claims. Case No. 24-cv-1378, Dkt. No. 11.

B. Related Federal Court Conviction

On September 21, 2007, the petitioner pled guilty in the U.S. District Court for the Eastern District of Wisconsin to Count One of a twenty-two-count indictment; Count One charged him with conspiracy to distribute one kilogram or more of heroin and fifty grams or more of cocaine base (resulting in death and serious bodily injury), in violation of 21 U.S.C. §§841(b)(1)(A) and 846 . United States v. Stibbe, Case No. 06-cr-223 (E.D. Wis.). Attachment A to the plea agreement recounted the petitioner's role in conspiracy and the November 2005 death of A.R. Id., Dkt. No. 137 at 16-19. The petitioner admitted that on November 29, 2005, he bought heroin for A.R. and others (in state court, he had pled no contest to A.R.'s death). Id. at 19.

On March 26, 2008, former Chief Judge Charles N. Clevert sentenced the petitioner to a term of 300 months imprisonment, to run concurrently with the sentences imposed in Ozaukee County Court Case Nos. 05CF295 and 06CF171. Id. at Dkt. No. 276. The clerk entered judgment on March 31, 2008, id. at dkt. no. 280, and the petitioner did not file a direct appeal.

On January 14, 2020, the petitioner filed a motion to vacate his federal conviction under 28 U.S.C. §2255, arguing that (1) reckless homicide by delivery of a controlled substance is not a crime of violence under 18 U.S.C. §16, so the court should not have applied a sentencing enhancement; (2) the petitioner's counsel was ineffective for failing to challenge the sentencing enhancement; and (3) under the Fair Sentencing Act the petitioner should be considered for a lesser sentence than his co-conspirators. Stibbe v. United States, Case No. 20-cv-60, Dkt. No. 1. This court denied the motion, finding that the petition was not timely filed. Dkt. No. 15 at 10. The court concluded that even if the petitioner had timely filed his petition, in his plea agreement he had waived his right to collaterally attack his sentence. Id. at 5, 12-14, 19-20.

The petitioner did not appeal from the denial of the §2255 motion, and he never attacked the validity of his guilty plea to Count One of the federal indictment (conspiracy to distribute one kilogram or more of heroin—resulting in death and serious bodily injury—and fifty grams or more of cocaine base).

C. Amended Federal *Habeas* Petition (Dkt. No. 11)

The amended petition raises four claims: (1) the petitioner's plea was not knowing or voluntary due to coercion and prosecutorial misconduct, (2) he received ineffective assistance of trial counsel, (3) he was actually innocent of having committed a violent crime "applicable by the Supremacy Clause" (apparently referring to Case Nos. 05CF205 and 06CF171, both of which involved convictions for "reckless" homicides) and (4) Wisconsin's classification of reckless homicide as a violent crime is unconstitutionally vague. Dkt. No. 11 at 6–9. It appears that the petitioner exhausted these claims by raising them in his state court postconviction motions.

At screening, the court allowed the petitioner to proceed on grounds one, two and four, but expressed concerns about the timeliness of the petition. Dkt. No. 12 at 6-7. The court determined that the petitioner's conviction became final on March 1, 2009 and that he did not file any other postconviction motions until October 11, 2021—nearly thirteen years later. Id. at 6.

**II. Respondent's Motion to Dismiss**

On October 10, 2025, the respondent filed a motion to dismiss, arguing that the petitioner had filed this federal *habeas* petition years after the one-year anniversary of the completion of direct review in the state court. Dkt. No. 16 at 1.

A. Respondent's Brief in Support (Dkt. No. 17)

The respondent argues that the petitioner took no action in the state court between 2008 (when the period for seeking direct review ended in the two

state cases) and October 11, 2021 (when the petitioner first filed his motions to withdraw his no contest pleas and to modify his sentence in the state court). Dkt. No. 17 at 3. Specifically, the respondent argues that the petitioner had thirty days to petition the Wisconsin Supreme Court to review the March 26, 2008 decision of the Wisconsin Court of Appeals on the no-merit direct appeal in Case No. 2005CF295. She contends that because the petitioner did not file a petition for review, direct review ended when the time for seeking such review expired in April 2009. The respondent maintains that the petitioner did not seek review of the denial of his November 17, 2008 motion for a resentencing, so that limitation period expired in December of 2009. Id. The respondent acknowledges that in early 2016, the petitioner filed a motion for sentencing credit, but she emphasizes that the petitioner took no further action until October 2021. Id. The respondent says that the petition is untimely by over a decade. Id. She asserts that the court must dismiss the federal *habeas* petition unless the petitioner can establish a basis for equitable tolling. Id. at 6. The respondent says that unless the petitioner can show extraordinary circumstances, reasonable diligence and/or actual innocence, the court must dismiss the petition and the case. Id. at 7-8.

B. Petitioner's Brief in Opposition (Dkt. No. 19)

The petitioner asserts that the respondent is "attempting to cover up coercion and prosecutorial misconduct through a procedural default claim." Dkt. No. 19 at 1. The petitioner maintains that he is actually innocent, and that he intended to go to trial until he met with his attorney, the district

attorney and a law enforcement officer in May of 2006. Id. at 4. The petitioner says that the district attorney threatened him with a forty-year sentence (which the petitioner said didn't make sense because "his case only carried 25 years") or the death penalty under federal law. Id. He maintains that the district attorney said that the threat "was sourced from" Assistant United States Attorney Dan Sanders. Id. The petitioner seeks an evidentiary hearing at which he could call Attorney Sanders to testify. Id.

The petitioner says that his attorney told him that the district attorney "had him over a barrel" and that he should take the plea to avoid a federal capital case. Id. He asserts that because he feared a death penalty, he also entered pleas to the three reckless homicide charges. Id. at 5. He points to language in the transcript in which the judge used the word "executed:"

> THE COURT: If you violate that probation, you would not come back to court for resentencing; that the—you would be—the sentence would be executed. You understand that?
> THE DEFENDANT: Yes, sir.
> THE COURT: You look a little quizzical there.
> THE DEFENDANT: You said executed.

Id. at 6. He says that the threat of the death penalty—a threat that was intended to trick him into pleading guilty—violated his constitutional rights and makes his conviction a "manifest injustice." Id. at 6.

The petitioner says that this is not a case in which he failed to diligently pursue his rights. Id. at 7. According to the petitioner, he had a real fear that he would be executed. Id. He rejects the idea that he is intelligent enough to have known better—he maintains that he was a twenty-three-year-old heroin

addict who had dropped out of high school and never even had held a job. Id. at 8. He explains that he didn't raise this issue because neither he nor his attorney knew that the statement about the death penalty was not true. Id. at 8. The petitioner contends that the court of appeals found that the topic of the death penalty did not come up but that his attorney "clearly stated that he had a lack of any memory about anything to do with the death penalty in conjunction with that meeting." Id. at 9.

The petitioner says he figured out that the threat of the death penalty wasn't true when his cousin asked him why he pled and told him there was no way that he was facing the death penalty. Id. at 9. The petitioner explains that his family hired Attorney Rex Anderegg, who told him that he never should have pled. Id. at 10. He insists that he was prompt in filing his motions once "there was no longer a sword of Damocles hanging over [his] head." Id. at 10.

According to the petitioner, equitable tolling applies in cases like this, where the petitioner had a real fear of being executed. Id. at 11. He reasons that the death penalty was a legal impossibility because "this has never been seen in the State of Wisconsin." Id. at 12. The petitioner suggests that the state inflicted "trauma intended to make him incapable of defending himself, which it did." Id. at 13. He explains that he is receiving treatment at the Wisconsin Resource Center for post-traumatic stress disorder, anxiety disorder and depression caused by these "extraordinary circumstances." Id. at 13.

The petitioner admits that he filed a motion for sentence credit, but says that his counsel was ineffective and that this, too, should excuse his default.

Id. at 14. He insists that he never sold heroin and was not present when anyone died from heroin; he says he simply was an addict who bought heroin for himself. Id. at 15. He maintains that there was insufficient evidence to convict him of any crime. Id. at 15. The petitioner contends, without any citation, that "multiple statements from witnesses which at first exonerate [the petitioner] morphed after threats made by D.A. Williams to lay the blame at [the petitioner's] feet." Id. at 16.

In a separate section of the brief titled "The Claims that Raise Constitutional Issues," the petitioner lists: (1) involuntary plea; (2) ineffective assistance of counsel; (3) void for vagueness (because, he argues, classifying reckless homicide as a violent crime is unconstitutionally vague); (4) prosecutorial misconduct; and (5) Escalona-Naranjo is not consistently applied. Id. at 18-19.

The petitioner filed a declaration asserting that he is actually innocent and that he did not understand the rights that he was giving up. Id. at 24. He says that his attorney advised him he would face significantly harsher punishment if he went to trial. Id. He adds that the prosecutor made representations during negotiations that further contributed to his pressure and confusion. Id. He asserts that his "attorney failed to investigate defenses or explain the consequences of pleading, including how the conviction would be classified as a 'violent crime.'" Id. He blames his delay in raising these issues on "limited resources, little knowledge of the law, and no access to materials to

explain habeas deadlines." Id. at 25. He avers that he did not become aware of the constitutional basis for his claims until 2021. Id.

The petitioner also included with his brief a motion for an evidentiary hearing on grounds one, two and four of his amended petition; he contends that the existing record is insufficient for review. Dkt. No. 19 at 26-27.

C. Respondent's Reply Brief (Dkt. No. 21)

The respondent replies that the petitioner has offered nothing more to excuse his default than a conversation with his cousin 2021. Dkt. No. 21 at 1. The respondent points out that the petitioner's attorney filed a no-merit direct appeal and that the petitioner never filed a response to the no-merit report. Id. at 2. The respondent states that the circuit court found the petitioner's plea coercion claim was not credible. Id. at 2. She emphasizes that the Wisconsin Court of Appeals upheld these credibility determinations. Id. The respondent says that the petitioner makes no attempt to acknowledge the credibility determinations or explain why he feels they are clearly erroneous, as required by 28 U.S.C. §2254(e).

The respondent adds that it is not unconstitutional for the prosecution to threaten greater charges, including federal charges, as long as the charges are supported by evidence. Id. at 3 (citing United States v. Goodwin, 457 U.S. 368, 382-84 (1982)). Finally, the respondent points out that a new, one-year limitation period is triggered by the discovery of *new* information, not a tardy recognition of the legal significance of information that always was in the

petitioner's possession. Id. at 3. The respondent argues that the petitioner offers no new and reliable evidence to prove his claims.

## III. Discussion

### A. One Year Limitation Period

A one-year statute of limitation applies to federal *habeas* petitions challenging state court convictions. See 28 U.S.C. §2244(d). That one-year period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1). The statute of limitation is tolled—paused—during the pendency of a properly filed application for state postconviction relief. See 28 U.S.C. §2244(d)(2).

Each of the petitioner's three state convictions (including the one that the petitioner appears to have abandoned in his amended petition) became final long before the petitioner filed any motion for postconviction relief. The petitioner did not file a petition for review with the Wisconsin Supreme Court on direct appeal. At the very latest, his conviction became final on November

18, 2008, when he failed to seek review of the order denying his postconviction motion. Using that (generous) date, the one-year limitation period for filing a federal *habeas* petition expired on December 18, 2009. The petitioner filed the pending *habeas* petition on October 23, 2024—almost fifteen years later. The statute of limitation bars his petition unless an exception applies.

B. Equitable Tolling

The petitioner argues that he is entitled to equitable tolling, which is available only if he "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. Diguglielmo, 544 U.S. 408, 418 (2005)). A petitioner who seeks equitable tolling has the burden of demonstrating both elements of the Holland test. Carpenter v. Douma, 840 F.3d 867, 870 (7th Cir. 2016) (citing Williams v. Buss, 538 F.3d 683, 685 (7th Cir. 2008)). The difference between the diligence requirement and the extraordinary circumstances requirement is whether the delay was within, or outside of, the petitioner's control. The diligence requirement for equitable tolling focuses on matters within the petitioner's control. Menominee Indian Tribe of Wis. v. United States, 577 U.S. 250, 257 (2016). The extraordinary circumstances requirement covers the circumstances outside of the petitioner's control. Id.

1. *Diligence*

The petitioner has not demonstrated that he has been pursuing his rights diligently. Although the doctrine of equitable tolling is a "highly fact-

dependent area" that courts approach with flexibility, equitable tolling is rare. Socha v. Boughton, 763 F.3d 674, 684 (7th Cir. 2014) (internal quotations omitted).

The petitioner says that he knew at the time of the plea negotiations that Wisconsin does not have the death penalty. Dkt. No. 11 at 18. He admits that he questioned the district attorney at the time of her statement. He could have questioned the district attorney about the information she allegedly provided regarding the federal death penalty. He did not file a reply to his counsel's no-merit brief on appeal, and, when he filed a *pro se* motion for sentence modification in 2016, he said nothing about a threat of the death penalty being the motivating factor for his plea. And even at that point, the limitation period had long before expired.

The petitioner took no further action until 2021, after he says he had a conversation with his cousin. According to the petitioner, he explained to his cousin that he entered no contest pleas because he feared the death penalty. Dkt. No. 19 at 9. He says that his cousin told him that that wasn't possible and offered to hire a new attorney. Id. at 10. He asserts that he acted diligently once he talked with his cousin and hired a new attorney—once, he says, the "sword of Damocles" no longer was hanging over his head. Id. at 10.

Courts faced with deciding whether a petitioner acted diligently often must contend with an underdeveloped record. But here, the state courts considered the petitioner's arguments about acting diligently. The Ozaukee County Circuit Court and the Wisconsin Court of Appeals found it incredible

that the petitioner did nothing over all those years despite the procedural safeguards in place and despite the multiple attorneys who assisted with his defense. Even if the petitioner's trial counsel had been ineffective, the petitioner had another attorney in the state court during the one-year limitation period, and he had an attorney in federal court. Yet he never raised the subject of the death penalty with any of these lawyers. He took no further action until 2021. The Seventh Circuit has referred to the due diligence requirement as the equivalent of "inquiry notice." Clarke v. United States, 703 F.3d 1098, 1100 (7th Cir. 2013). At the time of the statement and certainly at any time during the subsequent fifteen years, the petitioner had reason—and the ability—to inquire about whether he had truly faced the death penalty.

In his declaration, the petitioner states that he did not file his *habeas* petition sooner because he relied on his attorney to protect his rights "and was not informed that [he] could still pursue federal habeas relief." Dkt. No. 19 at 24. A petitioner must show reasonable effort throughout the limitation period. Mayberry v. Dittman, 904 F.3d 525, 531 (7th Cir. 2018). "[I]t is established that prisoners' shortcomings of knowledge about the AEDPA [Antiterrorism and Effective Death Penalty Act of 1976] or the law of criminal procedure in general do not support tolling." Davis v. Humphreys, 747 F.3d 497, 500 (7th Cir. 2014). And again, the petitioner could have asked any one of his lawyers—or even his cousin—at any point over the fifteen years whether the threat of the death penalty was real. He did not. The petitioner has not demonstrated due diligence.

That conclusion ends the inquiry. Nonetheless, for the sake of thoroughness, the court also will address the extraordinary circumstances requirement.

2. *Extraordinary Circumstances*

In his opposition brief, the petitioner offers a number of reasons that he argues support a finding of "extraordinary circumstances:" (1) he had a legitimate fear that he could be executed because he was "offered a choice of giving up his constitutional rights or facing death in a drug case;" (2) counsel was ineffective in telling him that the state had him "over a barrel" and that pleading would make the threat of the death penalty go away; (3) the petitioner was a drug addict and a high school dropout at the time of his arrest; and (4) the trauma from this threat caused post-traumatic stress disorder, anxiety and depression for which he now receives treatment at the Wisconsin Resource Center. Id. at 13. In evaluating his arguments, the court remains mindful of the fact that tolling determinations are "highly fact-dependent," and that courts "employ flexible standards" to resolve the issue on a "case-by-case basis." Socha, 621 F.3d at 672 (citing Holland, 560 U.S. at 649-51). Because the court must look at the "the entire hand that petitioner was dealt," Socha, 763 F.3d at 686, the court will discuss each argument in turn before considering the cumulative effect.

a. Threat of the Death Penalty

The petitioner argues that the district attorney "threatened him with execution in an attempt to induce a plea should he fail to plea to charges." Dkt.

No. 11 at 6. In his brief in opposition to the motion to dismiss, the petitioner argues that he did not challenge his plea until 2021 because the district attorney, who admitted that Wisconsin did not have a death penalty, told him that he could be charged with the death penalty in federal court. Dkt. No. 11 at 17. The petitioner says that when he "heard his cases could be moved to federal court and expose him to the death penalty, he shut down." Id. at 18. Dkt. No. 19 at 4. In other words, the petitioner implies that the district attorney's statements about the possibility of the federal death penalty created an external obstacle beyond the petitioner's control and caused the delay in his filing a federal *habeas* petition.

In evaluating this argument, the court turns to the record and evaluates the statements that the petitioner made to the state and federal courts. The petitioner admits that he knew at the time of his plea negotiations in the state court that Wisconsin does not have the death penalty. Id. He said that he challenged the state prosecutor on that point but that she replied that he could get the "federal death penalty." Id. The petitioner's declaration in support of his petition does not specifically reference the district attorney's statements during the plea negotiations but he generally references a "significantly harsher punishment" and "fear and pressure," and says that he felt coerced. Id. at 24.

The circuit court addressed this argument following a two-part evidentiary hearing that took place on June 20, 2022 and September 1, 2022. Dkt. No. 11 at 37. The petitioner doesn't challenge the circuit court's credibility findings (other than to argue that the circuit court shouldn't make credibility

findings), but he maintains that these statements were, in fact, made by the district attorney. He attaches emails that appear to have been exchanged between Ozaukee County District Attorney Sandy Williams and Assistant United States Attorney Dan Sanders. Dkt. No. 19-1 at 3-7. The petitioner finds the emails remarkable because they represent the "totality of what the State presented as far as communication between the two" but "there is never any discussion between Mr. Sanders and Ms. Williams regarding the death penalty." Dkt. No. 19-1 at 1.

The petitioner also attaches what he says are contemporaneous notes prepared by the district attorney in preparation for a meeting where she wrote, "[Petitioner] avoid federal indictment and death penalty." Dkt. No. 19-1 at 9, 10. He points to what he says was the state's brief stating "the State would be able to prove that an Assistant US Attorney had stated that he could bring a case against [the petitioner] that could result in the death penalty" and that the petitioner was dismissive of that possibility. Id. at 12. He attaches what he says was the district attorney's testimony about relaying to the petitioner that the Assistant U.S. Attorney had looked at different charges and could potentially have a charge that would include the death penalty. Id. at 15. Finally, the petitioner attaches a page in which the person testifying says that the purpose of the conversation was to relay the information from AUSA Sanders about the possibility of federal charges and not to secure a plea to avoid a state trial. Id. at 17.

The state courts did not ignore the district attorney's testimony when denying the petitioner's postconviction motion. The circuit court summarized the district attorney's testimony, the testimony of the petitioner's defense attorney and the testimony of the attorney who represented the petitioner in federal court. The circuit court's ruling did not rest on a finding that the district attorney never relayed a message from the federal prosecutor about an investigation or possible charges involving the federal death penalty. The petitioner included with his amended petition the circuit court decision. With respect to the testimony, the court wrote:

> Central to the [petitioner's] current motion is a meeting that occurred while 05CR295 was pending, which was attended by then District Attorney, but now Judge Sandy Williams, Detective Taylor, the [petitioner's] Attorney, William Mayer, and the [petitioner]. (June 20, 2022 Ev. Hrg. Tr., p. 12.) Judge Williams testified at the evidentiary hearing that she had previously met with Attorney Sanders, an Assistant United States Attorney, who was assisting federal authorities with a federal investigation that involved the [petitioner] as a target. (*Id.*, p. 16.) Judge Williams testified that during her meeting with Attorney Sanders, he conveyed he was interested in seeking the [petitioner's] cooperation with federal authorities and that Attorney Sanders alluded to the fact the [petitioner] may face federal charges that involve the death penalty. (*Id.*, p. 18-99, 22.) More specifically, Judge Williams testified: "Attorney Sanders indicated that they could find charges that would support the death penalty." (*Id.*, p. 37.) Judge Williams testified that she thereafter set the meeting to convey Attorney Sanders' interest in cooperation from the [petitioner] to the [petitioner], with his attorney present. (*Id.* p. 19.)
>
> The [petitioner] testified that following the meeting, he was terrified that he was going to be put to death. (*Id.* p. 53.) The [petitioner] testified that a couple days after the meeting with Judge Williams he met privately with Attorney Mayer to discuss his options, which the [petitioner] testified included the topic of whether he could face more charges. (*Id.* p. 53-54.) The [petitioner's] explanation of that discussion with Attorney Mayer is that there was no direct

> conversation about the [petitioner's] exposure to the death penalty. (*Id.* p. 54-56.) At most, the [petitioner] said he referenced that he was being threatened with the death penalty and Attorney Mayer did not respond to the topic. (*Id.* p. 73.) Further, when asked "how much of a role did [the death penalty reference] play in [his] decision to enter a plea," the [petitioner] responded: "it was the ultimate decision." (*Id.* p. 56.) The [petitioner] testified that because of the reference to the death penalty during the pendency of 05CF295, he testified he "believed from then on out he had to do what he was told. [T]hat . . . essentially [he] was given the impression and believed that . . . unless you do exactly what they want you to do, the death penalty is on the table. You could get put to death. You will die if you don't do what you're told." (*Id.* p. 57.) The [petitioner] testified that he did not raise his ongoing death penalty concern with the Judges in his circuit court cases at any point during either plea hearing in either case, and was actively dissuaded from bringing up the topic by his lawyer at all junctures. (*Id.* p. 81, 102-03.)
>
> The [petitioner] filed post-conviction motions in these matters. He testified that he did not raise the issue of the death penalty impacting his decision to plead guilty in either case with post-conviction counsel because he was afraid of being executed and did not know that he could or should have addressed the subject with his appellate attorney. (*Id.* p. 135-138.)

Dkt. No. 11 at 38.

The circuit court also summarized Attorney Mayer's testimony that he had little recollection of his representation of the petitioner, no recollection of talking with him about the death penalty and that he would not have allowed the plea to go forward if he had any reservations. Id. at 39. Attorney Anthony Cotton, who represented the petitioner in the petitioner's federal criminal case, testified that he had no recollection of the death penalty coming up during their discussions. Id. Attorney Cotton added that he was aware that under federal law, the death penalty was a possible penalty in complex drug transactions. Id.

The circuit court directly addressed—and rejected—the petitioner's argument that he failed to challenge the plea earlier because of his "sincere belief he continued to face the death penalty, combined with his ignorance of the law." Id. at 40. The court found that the petitioner's testimony lacked "credibility as to his explanation for why he failed to discuss his concern over the death penalty with any of his attorneys at any juncture during their representations." Id. Specifically, the court found that it was undisputed that the petitioner was involved in a "multi-state drug trafficking enterprise for which an Assistant United States Attorney represented the Defendant faced exposure of the death penalty" to Attorney (now Judge) Williams. Id. at 41. The circuit court found it clear that the federal authorities were interested in cooperation, but also found that the defendant had not proved that he was given false information or lied to about the charges. Id. The circuit court observed that the information about the federal investigation was presented to the petitioner in the presence of two attorneys. Id. Although the circuit court acknowledged that the information was likely meant to motivate the petitioner, it explained that "motivation does not equate to coercion." Id. The circuit court framed the petitioner's decision as a choice whether to assist the federal authorities or not. Id. It found that the petitioner had made a decision that was the product of his own free will, pointing to the completed plea questionnaire forms and plea colloquy. Id. The court observed that the petitioner had represented to court that he had made the plea of his own free will and had not been threatened, forced or received other promises. Id. The circuit court added

that the petitioner had made those representations to multiple judges. Id. The circuit court found it incredible that someone who believed he was "on the precipice of being executed by state or federal authorities would stand silent and fail to discuss his concerns with the very people who are his advocates: his lawyers." Id. In addition to finding that the petitioner's representations were undermined by the procedural safeguards in place, the circuit court found that his credibility was damaged "by inconsistencies in his recollection of the tone and tenor and words used during the meeting in question." Id. at 42. The petitioner misstates the circuit court's findings when he argues that the court based its decision on an "erroneous view of law, which would have the court believe that the death penalty was a legitimate outcome for a narcotics case in the Wisconsin State system." Id. at 20.

The Wisconsin Court of Appeals affirmed the circuit court's ruling, finding no basis to reverse the circuit court's "explicit and implicit credibility findings." Stibbe, Appeal Nos. 2023AP186, 2023AP187, 2024 WL 2954508, at *3. The court of appeals cited the circuit court's findings that the petitioner's credibility was undercut by the fact that in two cases he told the circuit court that his pleas were not the products of threats, he remained silent despite having access to multiple attorneys and procedural safeguards and his credibility was hampered by inconsistences and his "tone and tenor and words used." Id. So, two state courts have found it incredible that the petitioner would remain silent all those years.

The petitioner pled guilty to related charges in this federal court. On September 11, 2006, the petitioner was charged with a conspiracy to distribute one kilogram of heroin and fifty grams of crack cocaine over a five-year period where deaths occurred because of the petitioner's activity. United States v. Stibbe, Case No. 06-cr-223, Dkt. No. 606 at 12. Almost a month after pleading no contest in the state court, Stibbe, Case No. 06CF171, the parties filed the petitioner' plea agreement in federal court, which acknowledged his role in the offense and acknowledged that death and serious bodily injury resulted from the use of the heroin distributed in the conspiracy. Stibbe, Case No. 06-cr-223, Dkt. No. 137 at 2. The petitioner stated that he understood that the offense carried a maximum term of life imprisonment, and that he faced a mandatory minimum of twenty years' imprisonment. Id. at ¶6. In signing the plea agreement, he represented that he was pleading guilty freely and voluntarily because he was, in fact, guilty and that "no threats, promises, representations or other inducements have been made, nor agreements reached other than those set forth" in the agreement. Id. at ¶39. During his plea hearing, the petitioner told Judge Clevert that there was nothing said to him that was motivating his plea beyond what was stated in the written plea document. Id. at 13. AUSA Sanders clarified during sentencing that the government would recommend a 240-month (twenty-year) sentence to run concurrently with the sentence the petitioner received for the four deaths in the related Ozaukee County case. Id. at 14. After reviewing the record and hearing from the parties and the victims, Judge Clevert imposed a 300-month (twenty-five-year)

sentence. The petitioner never has attacked the validity of his guilty plea in the federal case despite his insistence that he feared the federal death penalty.

The petitioner bears the burden of proving extraordinary circumstances. The record, which has been developed on this issue, does not support a finding that the petitioner's alleged fear of the death penalty was a factor outside his control that prevented him from bringing his federal *habeas* claims earlier.

b. Ineffective Assistance of Counsel

The petitioner argues that his counsel's ineffective assistance supports equitable tolling. In the brief attached to his amended petition, the petitioner says that his trial attorney was ineffective because he told the petitioner that the district attorney had him "over a barrel" and that the best course of action would be to plead. Dkt. No. 11 at 18. He says that his attorney believed that the plea would end the discussion of the death penalty and that within days, he "pled guilty to the Rettig case." Id.

That issue also has been addressed by the state courts. The petitioner's attorney testified at the state court evidentiary hearing and recalled nothing about the death penalty impacting the petitioner's decision to plead. Dkt. No. 11 at 39. The petitioner simultaneously was negotiating with the federal government, and Attorney Cotton (the petitioner's federal defense counsel) testified that the death penalty never entered the conversation. Id. The Wisconsin Court of Appeals concluded that the petitioner was not entitled to withdraw his pleas because he failed to establish that the pleas were "either coerced or the result of ineffective assistance of counsel." State v. Stibbe, 2024

WL 2954508, at *3. Even now, the petitioner challenges his three, state-court sentences but never has attacked the validity of his federal guilty plea.

c. Age, Substance Use Disorder, Lack of Resources

The petitioner asserts that his age, substance use disorder, mental health and lack of resources satisfy the extraordinary circumstances requirement. The law has not recognized these factors as excusing an untimely filing. See Socha, 763 F.3d at 685 ("[L]ack of representation is not on its own sufficient to warrant equitable tolling, nor is a petitioner's lack of legal training."); Taylor v. Michael, 724 F.3d 806, 811 (7th Cir. 2013) (lack of legal knowledge is not an extraordinary circumstance); Arrieta v. Battaglia, 461 F.3d 861, 867 (7th Cir. 2006) ("Mistakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting invocation of the doctrine of equitable tolling."); Williams v. Sims, 390 F.3d 958, 963 (7th Cir. 2004) ("[E]ven reasonable mistakes of law are not a basis for equitable tolling. This is the general rule, and it has been applied repeatedly to pro se habeas corpus petitioners.").

d. Trauma/Mental Illness

The petitioner asserts that because of the threats that he might face the death penalty, he developed post-traumatic stress disorder, depression and anxiety. The Seventh Circuit has recognized that mental illness may toll a statute of limitations, but "only if the illness in fact prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." Mayberry, 904 F.3d at 530. The petitioner has not argued that he

had any of these mental health conditions at the time he entered his pleas; his statements before Judge Clevert in 2007 demonstrate that he understood the nature of the charges and that his pleas were voluntary. In 2016, he filed his own—successful—motion for sentence modification in the state court. In 2022, he testified on his own behalf at the evidentiary hearings regarding his postconviction motions. Although each of the conditions that he references undoubtedly makes life more difficult, he has not shown how any of those conditions affected him during the relevant period to such an extent that he would be eligible for the extraordinary relief of equitable tolling. See Mayberry, 904 F.3d at 531. There is simply nothing in the record to support the petitioner's claims that his mental health prevented him from filing his federal *habeas* petition within the relevant limitation period.

e. Consideration of All Factors

The circumstances the petitioner has cited—alleged threats that he could face the death penalty, alleged ineffective assistance of counsel, age, lack of education, lack of resources, substance use disorder and mental illness—are not extraordinary. They are, in fact, sadly common. Many people plead guilty in part because they are concerned that they will face significantly harsher sentences if they do not. Many, if not most, people who face criminal charges are young, undereducated, lack resources and struggle with substance use and mental illness. Many argue that they were convicted, or sentenced, because their lawyers provided ineffective assistance of counsel. And more to the point in this case, the petitioner's assertions that all these things prevented him from

timely filing a federal *habeas* petition are undermined by his own statements and actions on the record, and are not otherwise supported by case law.

C. Actual Innocence

Although the petitioner has not demonstrated that he is entitled to equitable tolling, "[a] prisoner's proof of actual innocence may provide a gateway for federal habeas review of a procedurally defaulted claim of constitutional error." McQuiggin v. Perkins, 569 U.S. 383, 386, 393 (2013). A viable actual innocence claim requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995); Dixon v. Williams, 93 F.4th 394, 403 (7th Cir. 2024) ("New evidence in this context is not 'newly discovered evidence,' but rather any evidence that was not presented at trial.") (quoting Jones v. Calloway, 842 F.3d 454, 461 (7th Cir. 2016)). Based on such new evidence and the rest of the available record, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327. Consequently, "tenable actual-innocence gateway pleas are rare[.]" McQuiggin, 569 U.S. at 386.

The petitioner asserts that he is actually innocent. He represents to this court that he "never sold heroin," that he "was not present when anyone died from heroin," that he "was not some 'middleman' who 'facilitated' others access" and that he "was not a 'gateway' others had to pass through." Dkt. No. 19 at 15. These assertions—unsupported by any newly-discovered evidence—

directly contradict the statements the petitioner made to Judge Clevert under oath.

In his guilty plea before Judge Clevert regarding the same drug activity in the same timeframe, the petitioner testified under oath:

> THE COURT: As it relates to what is charged in Count 1 and the events which took place sometime starting in 2001 and ending in September 2006. How were you involved in one or more of these persons identified in the indictment as co conspirators?
>
> DEFENDANT: Basically, I was buying heroin from pretty much each of them at different points. And through me, other people bought heroin from them. **Basically, I had middle-manned it I guess you would say.**
>
> THE COURT: When you say middle man, what do you mean?
>
> DEFENDANT: **They would pay me to help them get drugs.**
>
> THE COURT: And then you would go to one or more of the other defendants named in the indictment?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: When and where did this occur?
>
> DEFENDANT: **From basically nonstop except from when I was in the hospital, in jail or a couple instances when I was out of town everyday in Milwaukee County usually in the place listed, North 24th Street, 27th Street, different gas stations where we'd meet.**
>
> THE COURT: What quantities would you buy at any one time?
>
> DEFENDANT: It varied. $10 to $100, $200 at times depending on how much money I had, how much money other people had.
>
> THE COURT: Who was at least one person who [you] purchased heroin for?
>
> DEFENDANT: Well, Angela Raettig.

> THE COURT: You took money from Ms. Raettig and purchased heroin and returned the product to her?
>
> DEFENDANT: Yes.
>
> THE COURT: What is your consideration? What did you get for doing this? Were you just being a nice guy?
>
> DEFENDANT: I got paid one bag of heroin, $20 bag for it.

Stibbe, Case No. 06-cr-223, Dkt. No. 606 at 25-26 (emphasis added). The petitioner's reference to Raettig is relevant because he pled no contest to Raettig's death in the state court.

At the time of his plea, no one expressed concerns about the petitioner's mental competence, id. at 8, and Attorney Cotton represented to the court that he had discussed motions, defenses, the plea negotiations, constitutional rights and trial with the petitioner. Id. at 9-10. The petitioner did not challenge the voluntary nature of his plea in his federal case—his §2255 motion sought only a sentence reduction. Stibbe v. United States, Case No. 20-cv-60 (E.D. Wis.). On May 17, 2022, this court denied his §2255 motion and dismissed the case. Dkt. No. 15.

Given his admissions to this court, which are inconsistent with the actual innocence claims that he makes in the instant petition, and the lack of any evidence in the record establishing his innocence (beyond his own self-serving assertions), the court rejects the petitioner's actual innocence argument. Under any view of the facts, the petition is untimely and the petitioner has not met his burden with respect to his equitable tolling or actual innocence arguments. The court will deny the petition and dismiss this case.

## IV. Certificate of Appealability

A certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). Where a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim and about whether the procedural ruling was correct. Flores-Ramirez v. Foster, 811 F.3d 861, 865 (7th Cir. 2016). Here, the court does not find that reasonable jurists could disagree that the petitioner's claims are untimely. Accordingly, the court declines to issue a certificate of appealability.

## V. Conclusion

The court **GRANTS** the respondent's motion to dismiss. Dkt No. 16.

The court **DENIES** the petitioner's amended petition for writ of *habeas corpus*. Dkt. No. 11.

The court **DECLINES** to issue a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 4th day of August, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**